## CUMMING et al. v. THE BARRACOUTA.

*(Circuit Court, S. D. New York. November 9, 1889.)*

SHIPPING—CARRIAGE OF GOODS—NEGLIGENCE—BURDEN OF PROOF.

In a suit for the loss of the contents of certain casks and kegs during transportation on a vessel, the defense was that the loss arose from leakage, for which by the terms of the bill of lading the carrier was exempt from liability. It appeared that on the arrival at the port of discharge the cargo was transferred to lighters in the employ of the vessel for delivery to the owners. When delivered by the lighters all the casks were in bad order, some having their staves broken at the bilge, and others their hoops started and gone, and their contents, which were liquid, also gone. The hoops of the kegs were started and some of them gone, and the staves were broken. None of the lightermen were called as witnesses by the vessel, but witnesses for the vessel testified that when the casks and kegs were delivered to the lighters some of the casks were empty, apparently from leakage. *Held*, that inasmuch as the appearance of the casks and kegs when delivered to the owners was as consistent with the theory of the loss of their contents by breakage as with the theory of the loss by leakage, the burden of proof was upon the vessel to show clearly that the loss arose from the excepted cause; that, having failed to call the lightermen as witnesses, or give any evidence showing that the cargo was delivered by the lighters in the condition in which it was when received by them, the vessel was not exonerated by a satisfactory vindication.

In Admiralty. Libel for injury to cargo. On appeal from district court. 39 Fed. Rep. 288.

*Arnold & Green*, for appellants.

*Wing, Shoudy & Putnam*, for appellee.

WALLACE, J. In December, 1877, the libelants, through their agents at New York, shipped at that port upon the steamship Barracouta, in good order, for transportation to Trinidad, Spain, 14 casks of stannous chloride, containing 9,060 pounds, and 20 kegs of salts, containing 705 pounds. The steamer sailed December 17th, and, after encountering very severe weather on her voyage, reached Trinidad, December 29th, where her cargo was transferred to lighters employed by the steamer, and by them taken to the government warehouse on the dock. After the cargo was landed at the warehouse, all the casks were found to be in more or less bad order. The staves of two were broken at the bilge, and were entirely empty. The others had their hoops started, and two of them had their heads bulged; and all were leaking, and more or less deficient in contents. Of the kegs, several were deficient in their contents, and in bad order; the hoops being started, and some of them gone, and the staves broken. The value of the missing contents was $1,082. The libelants have brought this suit to recover for their loss. The defense is that the loss arose from leakage; for which, by the terms of the bill of lading, the steamer is exempt. The case made by the libelants is met by the testimony for the steamer that, when the cargo was taken out to be transferred to the lighters, two of the casks were found to be empty, and the others indicated that their contents had leaked through the seams; but the steamer's witnesses also testify that none of the casks or kegs presented any appearance of external injury, neither the heads, staves, nor hoops being displaced. The steamer's cooper was not called as a witness, and it does not appear that any cooperage was done to the casks. The theory for the steamer is that the liquid chloride could not be safely transported in casks; that there is danger from expansion when it is shipped in wood if it is exposed to heat; and that the leakage arose from this cause, or because the casks were not sufficiently strong. The testimony shows that the article is usually shipped in carboys, but it is also sometimes shipped, both by sea and rail, in strong casks. In the present case the casks were selected by the manufacturer of the chloride, who was accustomed to ship it in casks, as especially strong and good ones for the purpose. None of the lightermen were called as witnesses for the steamer to corroborate the testimony of her own men respecting the condition of the casks and kegs when they were transferred to the lighters.

When goods in the custody of a common carrier are lost or damaged, the presumption is that the loss was occasioned by his default, and the burden is upon him to prove that it arose from a cause for which he is not responsible. The *onus*, therefore, is upon the steamer to show that the present loss arose from leakage; and, if the evidence is as consistent with the conclusion that the loss arose from negligence, the libelants

are entitled to recover. The lighters were employed by the steamer; and, as she is responsible for the acts of the lightermen, it is immaterial, if there was negligence, whether it took place while the goods were in charge of the lighters, or directly in charge of the steamer. The condition of the casks when they were landed in the warehouse was such as to denote that they had been roughly handled during the transit, or injured by external violence of some kind. Their appearance indicated a loss of the contents by breakage, rather than by leakage. Unless their condition was caused by external violence, it can only be accounted for by some chemical action of the contents, so powerful as to burst the heads, and break and displace the staves and hoops, because it is shown by the testimony for the steamer that they were not injured by the rough weather of the voyage. But the kegs containing salts were in nearly as bad a plight as the casks, and there is no room for any such theory as to them, or for the supposition that the loss of their contents arose from leakage. If the testimony of the officers of the steamer is true, and the staves and hoops of the casks and kegs were intact when the cargo was taken out of the hold and transferred to the lighters, the condition in which they were when landed is attributable to the carelessness of the lightermen. The circumstance that no cooperage was done to the casks, although the steamer customarily did it to cargo in need of it, is consistent with the truth of this testimony. Yet it seems hardly probable that the two empty barrels, from which they say the contents had escaped, were injured by the lightermen more seriously, the staves being broken at the bilge, than the full barrels, which, with their contents, weighed nearly 650 pounds. On the other hand, if their testimony in this behalf is untrue, their testimony as to the appearances of leakage is not entitled to credit. The steamer has not examined any of the lightermen as witnesses, or produced any testimony with a view of showing that the casks and kegs were delivered from the lighters in the same condition in which they were received by them. It was within the power of the steamer to produce this testimony, and the failure to produce it suggests either that the lightermen would not corroborate the testimony of the witnesses for the steamer, to the effect that the casks and kegs, when they left the steamer, were not broken, or that the lightermen cannot satisfactorily explain how the casks and kegs came to be landed in their damaged condition, if they were not in that condition when received by them. It is not shown satisfactorily that the loss is attributable to any insufficiency of the casks. The case is one in which the evidence of careless handling of the casks and kegs, somewhere during the transit, is such as to put upon the steamer the burden of full proof in exoneration of negligence. Full proof has not been given; and the question how the loss occurred, or, if any arose from leakage, how much, is left in doubt. If it cannot be ascertained how much of the loss sustained by the libelants arose from leakage, and how much from the breaking of the casks and kegs by improper handling, the ship must bear the whole loss. In cases like this, where goods which have been transported by the carrier in fit packages or receptacles are delivered to the owner in a damaged condition, the packages broken,

and the contents partly missing, although the latter may justly assume, in the absence of information showing injury by *vis major* that his property has been carelessly dealt with, he cannot ordinarily prove the particulars of the carelessness, because these are only known to the carrier or his servants. It is right, therefore, under such circumstances, that the carrier should be required to vindicate himself thoroughly; and if he fails to produce his own servants or employes, whose testimony might clear up any doubtful points, he cannot complain if every presumption is taken against him. The libelants were led to believe, from the statements of the lightermen, that the casks and kegs were in the same condition when received on the lighters that they were in when delivered at the warehouse. They assumed, therefore, that their loss was probably caused by the improper stowage of their goods, and framed their libel principally upon this theory; but the averments in the libel are sufficient to entitle them to recover for negligence in any other respect.

A decree is ordered for the libelants for the sum of $1,082, with interest, and with costs of the district court and of this court.